# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 CR 282—1, 2 | **DATE** | 5/11/2001 |
| **CASE TITLE** | United States of America vs. Leonard Chavin, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Enter Memorandum Opinion and Order. Motions of Defendant Chavin for entry of an order (Doc. 137-1) and for default (Doc. 161-1) denied. Motion of Defendant Litwin to adopt (Doc. 155-1) granted. Motion for arrest of judgment (Doc. 136-1) or new trial (Doc. 136-2) denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 4 2001 | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 172 |
| | Mail AO 450 form. | | 5/11/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | courtroom deputy's initials | | ETV | |
| ETV | | | mailing deputy initials | |

GD-7
FILED FOR DOCKETING
01 MAY 11 PM 2:59

Date/time received in central Clerk's Office

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 99 CR 282-1 |
| | ) | |
| LEONARD CHAVIN, and | ) | Judge Rebecca R. Pallmeyer |
| MARTIN LITWIN | ) | |

## MEMORANDUM OPINION AND ORDER

Leonard Chavin may well regret his decision to appeal from a decision denying him a discharge in bankruptcy. In its opinion affirming that decision, our Court of Appeals referred the case to the Department of Justice for a possible bankruptcy fraud prosecution. *See In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1999). This criminal case followed and resulted in guilty verdicts against Mr. Chavin and his lawyer, Martin Litwin, on a number of tax and bankruptcy fraud charges.

Both Defendants have filed post-trial motions, which are addressed below. In addition, this opinion sets forth the court's rulings on issues relating to Mr. Chavin's sentencing, issues which have been addressed in written submissions and at a lengthy hearing on May 2, 2001.[1]

---

[1] The court notes its appreciation of the efforts made by counsel, including particularly AUSA Diane MacArthur and defense counsel John M. Cutrone, and the probation officer, Isabelle Dominguez. The submissions of each of these officers of the court were extraordinarily thoughtful and comprehensive.

# DISCUSSION

## I.    Chavin's Post-Trial Motion

### A.    Sufficiency of the Evidence

As the government argues, many of the arguments raised by Mr. Chavin amount to challenges to the sufficiency of the evidence on which the jury convicted him. A motion for a new trial on this basis is not favored and will be granted only in exceptional cases. *United States v. Jadernay*, 221 F.3d 989, 992 (7th Cir. 2000). The hurdle a defendant must overcome to successfully challenge the sufficiency of the evidence is formidable. *United States v. Van Dreel*, 155 F.3d 902, 906 (7th Cir. 1998) (citing *United States v. Crowder*, 36 F.3d 691, 695 (7th Cir. 1994)). In determining whether any rational trier of fact could have found the defendant guilty, the court must view the evidence in the light most favorable to the government. The could will not reweigh the evidence and will overturn a jury verdict only if the record contains no evidence from which the jury could find the defendant guilty beyond a reasonable doubt.

Chavin's central attack here is to the credibility of Michael Glickman, who pleaded guilty to his own involvement in a phony business purchase and subsequent perjury. Glickman's credibility was in fact a key focus of the evidence offered by the defense. The jury was amply aware of Mr. Glickman's financial circumstances and was presented with evidence that he took advantage of or cheated his own relatives who themselves believe him to be a liar. There were independent witnesses, however, who corroborated significant elements of Glickman's testimony. The court is unwilling to determine on this record that

2

no rational jury could have found Chavin guilty beyond a reasonable doubt.

## B.     Rulings on Motions

To the extent Chavin challenges the court's rulings on pretrial motions or evidentiary issues, the court is not inclined to revisit these issues. Among the tax fraud charges against Mr. Chavin was the charge that he engaged in a fictitious sale of his business in order to claim a bad-debt tax loss. The fictitious purchaser, Defendant Michael Glickman, was recruited for his role in this transaction by Glickman's cousin and Chavin's attorney, Defendant Martin Litwin. Both Litwin and Glickman were involved in the bankruptcy proceedings that generated the bankruptcy fraud charges. Although a series of transactions and independent charges were presented to the jury, they bore a sufficient relationship to one another to be tried in one proceeding; indeed, separate trials would have required significant duplication of effort on the part of the government, the court, and defense counsel. Chavin presents no new argument as to prejudice he suffered due to the court's refusal to grant his severance motion.

Nor has he offered any further basis for the argument, previously rejected by this court, that Count II of the Indictment is barred by the statute of limitations.

Third, with respect to Chavin's motion for a bill of particulars, the court notes that the Indictment charged Chavin with making false allegations in the bankruptcy proceedings concerning six specific assets. These allegations are, in the court's view, adequate to put Chavin on notice of the charges against him. He had access at all times to the transcripts of the deposition he gave in the bankruptcy court and the government provided his attorney

with a copy of the transcript portions the prosecution intended to use at least a day before they were offered in evidence. If this much advance notice was inadequate, Mr. Chavin has not explained why, nor does he state how, he was prejudiced in preparing his defense.

Chavin next argues that the government reneged on its agreement that it would offer no "prior bad acts" (Rule 404(b)) evidence. The government argues that the evidence at issue -- Mr. Chavin's statement, in a letter to the court, that he had never met or seen Michael Glickman -- can properly be understood as substantive evidence of the crime charged. Specifically, the United States contends that Mr. Chavin's statement is evidence either that the sale of his business to Mr. Glickman was a sham or that Mr. Chavin's contrary testimony at his bankruptcy deposition was false. The court did not believe this offer of evidence violated the government's pre-trial agreement, and Mr. Chavin's arguments do not now persuade the court otherwise. Nor does the court believe it was required to shield the jury from the fact that Mr. Chavin made this statement in a letter to the court itself.

Finally, Chavin argues again that the court should have permitted Defendants to question Michael Glickman's mother, Sonya Glickman, about the "Brickyard loan transactions" in which Mr. Glickman allegedly defrauded his mother by persuading her to act as co-signor on two $25,000 loans. The court entered a brief written order on this matter and adopts that order herein. In any event, the court notes that Chavin's lawyer did question Mr. Glickman himself extensively concerning the loans at issue. To question his mother about wrongdoing which Glickman himself denied would constitute impeachment as to a collateral matter and run afoul of Federal Rule of Evidence 608(b). Similarly, the court

4

permitted counsel to ask Ms. Glickman for her opinion concerning her son's truthfulness, a question permitted by Rule 608(a), but did not permit her to invade the province of the jury by stating whether she would believe his testimony under oath.

## C.  Other Evidentiary Rulings

As in any lengthy trial, the court made numerous evidentiary rulings that may be subject to challenge.  The court believes these rulings were not an abuse of discretion.  First, Chavin argues that the court erred in overruling an objection to the prosecutor's leading question of Hon Wee Kang concerning the question of who set a $50,000 price tag on a lease termination that occurred in connection with a sale of Chavin's property.  Specifically, AUSA Ellis asked Mr. Kang, "So I am clear, sir, Mr. Chavin told you that he would pay you $50,000 to terminate the lease?" (Tr. 262-63.)  After the court overruled the defense objection to this question, Mr. Kang answered, "Yes."  But this testimony is not substantively different from the testimony Kang gave in response to cross examination: "What he told me, Mr. Chavin, about the cancellation, he said, 'You will get about $50,000.' " (Tr. 264-65.)  Any error in permitting Mr. Ellis to ask a leading question was therefore harmless.

Nor is the court troubled by its ruling on Chavin's "beyond the scope" objection to redirect examination of witness Nancy Lewis.  Chavin's attorney, Mr. Cutrone, had asked her on cross examination, "Certainly there was nothing about the transaction itself or the documents that you received that gave you any indication that anything improper was going on here?"  (Tr. 293.)  Because the charges here related to the tax implications of the transactions at issue, it was proper for the prosecutor to ask her, "You don't have anything

5

to do with how he reports it or doesn't report it on his taxes?" (Tr. 294.)

Next, Chavin believes the court erred in sustaining objections to his question of Michael Glickman concerning whether loans which Mr. Glickman viewed as forgiven were income to him. The court understood questions concerning Mr. Glickman's income as relevant only with respect to the time frame in which Mr. Glickman posed as purchaser of SCV Corporation (1991-1992). In any event, as the government points out (Government's Consolidated Response to Post Trial Motions, at 8), Mr. Cutrone did not present the argument he now offers, that the matter of Glickman's failure to report the income is relevant to Mr. Glickman's motive to testify for the government.

The jury was aware of Glickman's guilty plea, and the court sees no error in its admission of his plea agreement in evidence. *See United States v. Robbins,* 197 F.3d 829, 841 (7th Cir. 1999) (citing *United States v. Lewis,* 110 F.3d 417, 421, (7th Cir.), *cert. denied,* 522 U.S. 854 (1997)). Defendants had ample opportunity to cross-examine Glickman on the terms of his plea, and the court instructed the jury just before Glickman took the stand that they should not impute to Defendants any inference from the fact that Glickman had pleaded guilty. In addition, the court gave cautionary instructions concerning Glickman's testimony as in *Robbins.*

Glickman answered "absolutely not true" to Mr. Cutrone's question, whether on Tuesday, October 21, 1998, "you asked [Mr. Litwin] for money or you asked him for compensation." Later, however, Glickman acknowledged that he had told Mr. Litwin "that he 'should be compensated for his trouble.' " (Tr. 470-71.) Believing he had now caught

6

Glickman in a lie, Cutrone sought to ask Glickman whether his testimony was a lie. The government correctly notes that the earlier question was a compound one, in that it demanded that Mr. Glickman acknowledge making both the statement he did make and the one he denied making. In any event, the jury certainly heard and could comprehend the inconsistency Mr. Cutrone believes should be emphasized. The court's refusal to permit Mr. Cutrone to characterize this inconsistency as a "lie" is not, in the court's view, significant. Nor did counsel lay an appropriate foundation for the effort to introduce telephone records showing that Glickman made a two minute call to Litwin's office on November 24, 1998. Glickman denied that he "called Mr. Litwin and told him [he] wanted $30,000." (Tr. 2607.) He did not deny making any calls to Mr. Litwin on that day.

The court permitted witness Carolyn Sime, a bank officer, to testify that she received a call from someone who identified himself as a real estate attorney because such testimony was not offered for its truth, but to explain Ms. Sime's subsequent actions. The court gave an appropriate limiting instruction and presumes the jury followed it. Ms. Sime testified that she was uncertain whether the name of the individual who called her appeared on the signature card; the court does not understand this testimony as prejudicial to Defendants.

Mr. Chavin told John Taflan, a Cole Taylor Bank officer, that he intended to continue to manage the SCV Corporation business and continue to guarantee Cole Taylor's loan even after the sale of the business to a third party. Mr. Cutrone asked Taflan about these representations in an effort to demonstrate that these circumstances by themselves did not suggest that the sale was not a bona fide transaction. The government disagreed and, on

redirect examination, sought Mr. Taflan's definition of an "arm's length" transaction. Chavin argues the court erred in permitting this question because it was not limited to the nature of the transaction for tax purposes. The context of Mr Cutrone's own questioning of the witness, however, was not limited to tax matters either. The court sees no basis here for a conclusion that any error with respect to the "arm's length" questions infected the jury's verdict.

Chavin argues that the court should not have admitted the handwritten notes prepared by Robert Baznik concerning his questions of Mr. Chavin and Chavin's answers. The court notes, however, that the government laid a foundation for the admission of this document and Defendants did not challenge that foundation at trial.

The court also permitted witness Kathy Farmer to read a memorandum she prepared soon after meeting with Mr. Chavin and another attorney in 1993 under the "past recollection recorded" doctrine. Chavin now argues this was improper because "Kathy Farmer did have sufficient recollection of the meeting to enable her to testify with reasonable accuracy." (Chavin's Post Trial motion ¶ 17.) The court's own recollection of her testimony is to the contrary: Farmer testified repeatedly that she could not remember details even after reviewing her memorandum. (Tr. 836-41.) Chavin urges that "the other requirements" for this exception were also not established, but he does not identify these other requirements and the court deems the arguments waived.

Chavin urges that the court erred in admitting certain evidence concerning communications with his accountant, Samuel Kessler. Specifically, Kessler was permitted to

testify that Chavin directed him to stop including information concerning the 6324 South Halsted property on his income tax returns and to send such information to his daughter's accountant instead. Further, Chavin declined Kessler's offer to file amended returns which eliminated that property. The government argues that the evidence is admissible to establish that the sale of SCV Corporation was a sham transaction that enabled Chavin him to take a bad-debt loss. Further, according to the government, the evidence demonstrates that Chavin realized that including SCV's assets in his own return would be inconsistent with his claim that he had sold those assets, and that he elected not to file amended returns because he wanted to escape IRS attention. The government notes, as well, that Chavin made efforts to exclude the property from his return at or near the same time that his bankruptcy proceeding began. The government is entitled to offer any evidence probative of the issues before the jury. Although the evidence at issue here is hardly a "smoking gun," the court agrees with the prosecution that it meets the test of admissibility and is not more prejudicial than probative.

Similarly, the court admitted evidence that, 20 years ago, Chavin took and passed a test in order to receive an insurance broker's license. Again, this is hardly overwhelming evidence of the fact the government sought to prove, but it does tend to establish that Chavin understood that the insurance policies he failed to disclose in bankruptcy had value, despite the fact that he no longer made premium payments on them.

Chavin argues that it was improper for the court to admit his June 11, 1997 deposition for several reasons, including the fact that the government did not charge him with

concealing his interest in Howard's Style Shop. In fact, however, the government did charge

Mr. Chavin with filing a false Schedule B in part because he failed to disclose his interest in

Howard's Style Shop. (Indictment, Count 14, page 22.) He testified at a June 11, 1997

bankruptcy deposition that he had purchased shares in Howard's Style Shop from Michael

Glickman in October 1996, and that he repurchased SCV Corporation from Glickman,

testimony that the government contended was false. This evidence went directly to the

charges and was not offered, as Chavin now contends, "merely to paint Leonard Chavin as

a bad man." (Chavin's Post Trial Motion ¶ 20.) Nor is the court concerned about the

adequacy of the two days' notice provided by the government of its intention to use this

transcript (Chavin's own testimony).

Contrary to Chavin's argument, the court believes it was proper for William Factor

to offer his opinion concerning Chavin's business expertise, a matter on which the jury heard

testimony from Samuel Kessler, Robert Ellis, and Jason Sharps, and argument from defense

counsel.

Although Chavin now argues that the court improperly limited his examination of

his own expert, Jason Sharps, concerning mistakes made by Samuel Kessler (Post Trial

Motion ¶ 25), the court notes that defense counsel asked Kessler about other mistakes Kessler

made on Chavin's returns and merely required counsel to limit Sharps' testimony to those

calculations that related to the charges in this case. Chavin wanted to ask Sharps whether

Kessler could have protected himself against forgetting a conversation had he engaged in

Sharps's own practice of making notes, but the court believes that question calls for

speculation. On the other hand, Sharps was properly questioned by the government concerning his opinion about the propriety of Chavin's claimed bad-debt loss where SCV "had been operating at a loss for years," (Tr. 2406) because the government furnished the necessary context: that a taxpayer is required to take a bad-debt loss at the time it becomes worthless. (Tr. 2407.) Nor does the court see impropriety in the government's cross-examining Sharps by reference to testimony Chavin gave in the bankruptcy proceeding concerning the SCV sale.

Defendants again challenge the court's determination that, should Martin Litwin take the stand, the court would permit the government to offer limited evidence concerning a 1996 driver's license suspension and a 1997 contempt proceeding. The court in fact sustained Litwin's objection to the government's proposed offer of substantial additional material relating to Litwin's divorce proceeding. The court explained its reasoning on the record (Tr. 2456-60; 2477-78) and, in addition, entered a written order on these matters and incorporates that order here. Chavin's argument that he was himself deprived of the benefit of his co-Defendant's testimony bears little discussion. Chavin was entitled to testify on his own behalf and chose not to do so.

### D. Instructions

Chavin argues that the court erred in instructing the jury that the government was not required to prove that a charged conspiracy actually accomplished its goal. Use of that pattern instruction was appropriate, however; the jury could well have concluded that because the IRS became involved in investigating the Defendants, they had not accomplished

the purpose of their conspiracy. Chavin urges, in addition, that the court should not have given the instruction that an individual need not join a conspiracy at the beginning in order to be guilty. The instruction was appropriate, however, because the jury could have determined that Chavin took action related to the goals of the conspiracy even before Litwin became involved. In any event, Chavin did not raise an objection to these instructions at the time they were given.

Chavin argues that the court should have given the jury an instruction concerning his good faith reliance on a tax professional. The court did, in fact, give such an instruction and believes it to be an accurate statement of the law and of Chavin's theory of defense.

Finally, Chavin asked for an instruction that the mere fact he signed a tax return is not sufficient to establish he had knowledge of its contents. Sensitive to his concerns, and the concern of the government that Chavin not be permitted to rely on wilful ignorance, the court did add language to the pattern knowledge instruction as follows: "In making a determination whether defendant Chavin acted knowingly, you should consider whether the total circumstances, including but not limited to the bare fact of the defendant's signature on various documents, justify the inference that the defendant knew what he was signing, or that he deliberately refused to acquaint himself with the documents, which has the same legal significance." While preserving his objections (Tr. 2569), Chavin's attorney stated, "I don't have any problem with that" added language. (Tr. 2565-66.) Defendant was permitted to argue that his signature alone is not conclusive on the issue of his knowledge, and the court believes the instruction it gave was accurate and adequate.

12

## E.    Closing Arguments

Chavin urges that the government erred when it told the jury in closing that "[t]he $300,000 was missing because, as Mr. Kessler told you, Mr. Chavin had said that wasn't money coming in to Mr. Chavin, it was money that Mr. Chavin himself had put into the deal . . . ." (Tr. 2636-37.) During the argument itself, Chavin's counsel objected to the date that appeared on a demonstrative chart concerning his communication with Kessler, but the government explained to the jury that the date was an approximation. (Tr. 2637.) If improper at all, the court does not believe the government's statement was so prejudicial that the verdict may fairly be questioned. Nor does the court agree with Chavin that the government violated this court's instructions concerning Glickman's plea agreement. To the contrary, the government asked permission to refer to Glickman's testimony concerning the agreement, and did only that.

## II.    Litwin's Post-Trial Motions

Defendant Litwin seeks arrest of judgment or a new trial. His argument for arrest of judgment may be disposed of readily: Litwin incorporates the statute of limitations argument he made in his motion to dismiss the indictment on December 8, 1999. In fact, however, Counts I, IV, and VI of the superseding indictment charge conduct that occurred "from approximately July 1992 and continuing thereafter to in or about February 1997"(Count I); on August 9, 1994 (Count IV); and on April 10, 1995 (Count VI). None of these charges is time-barred.

The arguments made in Litwin's motion for a new trial are discussed individually

below.

### A. Sufficiency of the Evidence

First, Litwin challenges the sufficiency of the evidence. As Chavin did, Litwin focuses his challenge on the credibility (or lack thereof) of the government's central witness, Michael Glickman. As noted earlier, Defendants had ample opportunity to cross-examine Glickman and did present the jury with ample evidence that Glickman is not trustworthy. The court is unwilling to second-guess the jury's conclusions with respect to the weight of the evidence or any witness's credibility.

### B. Evidentiary Rulings

Several of the issues raised by Defendant Martin Litwin in his post-trial motions overlap with arguments made by Defendant Chavin. For the reasons already addressed, the court overrules Litwin's objections relating to Carolyn Sime's testimony, the Baznik notes, the Kathy Farmer memorandum, the Glickman plea agreement, the November 24, 1998 telephone record, and to the court's determination that, if Mr. Litwin testified, the government would be permitted to offer certain court records.

### C. Rulings on Motions

Litwin renews his objection to the court's refusal to permit him to appear as his own co-counsel in this case. For the reasons set forth in a November 2, 2000 order (which order is incorporated here), that objection is also overruled.

Litwin contends the court improperly permitted IRS agent George Murray to remain in the courtroom while the government's tax expert, Robert Ellis, testified. The government

14

assured the court that Murray would not testify, however, and Litwin has not explained how Murray's mere presence in the courtroom could have influenced Ellis' testimony or otherwise prejudiced Litwin's defense. This objection is overruled.

Several days into this lengthy trial, the government sought leave to substitute AUSA Jon King as trial counsel, after AUSA Brian Ellis was required to leave town. The background for this request is significant: Mr. King was involved in this matter from the time of the indictment and arrests. He appeared at numerous status conferences and participated in several hearings at which the court addressed issues relating to Defendant Leonard Chavin's representation. The court granted Mr. Chavin's requests for continuance of the trial over AUSA King's objections.

Due to the scheduling of another criminal trial in this courthouse, AUSA King was unable to conduct the trial in this case. The court reluctantly denied the government's request for a continuance, and AUSA Ellis was brought in to assist AUSA Diane MacArthur, who had been working with Mr. King for some time. The situation was clearly not ideal for the prosecution; AUSA King had been prepared to proceed for several months, and AUSA Ellis, brought in close to the new trial date, had a conflict that required him to leave before the trial was completed. By the time of Ellis's departure, however, AUSA King was again available to step in. Defendant Litwin objected, and the court repeatedly offered him the opportunity to explain the basis for his objection, and to identify any legitimate basis for concern that Litwin's defense would be prejudiced by Mr. King's re-entry. Litwin offered no such explanation. He now argues that King "misstat[ed] evidence concerning the sale

proceeds of the Halsted Street property" and improperly "insinuat[ed] and speculat[ed] as to Defendant Litwin's participation in the preparation of tax returns." The court is uncertain what specific statements Litwin is referring to; AUSA King did not argue the case and cross examined only those witnesses whose direct examination he observed in person. If King asked improper questions, Litwin was free to object and to have his objections considered on their merits. The government is entitled to its choice of counsel, and the court does not believe the substitution was improper.

### D. Instructions

Litwin objects to three pattern instructions and to the court's reading of certain statutory definitions. First, with respect to the definitions: Contrary to Litwin's suggestion, the court does not believe that a one-sentence definition of conspiracy, taken from 18 U.S.C. § 371, can fairly be described as "unduly repetitious." Litwin now argues that the court should not have furnished the jury with a definition of the crime proscribed by 26 U.S.C. § 7206(2) (willfully aiding or assisting the filing of a fraudulent tax return) because there was no evidence of any violation of that statute. To the contrary, however, Litwin was charged in Count IV of the superseding indictment with violating that section, and the jury found him guilty of that violation. Nor does the court find anything "misleading" in the single-sentence definition of the crime of perjury set forth in 18 U.S.C. § 1623.

Nor is the court troubled by the three instructions with which Litwin takes issue. Each is a Seventh Circuit pattern instruction. Pattern Instruction 4.04 explains that the government is not required to prove that an offense happened on a precise date. Pattern

Instruction 2.01 tells the jury that Litwin is charged with aiding and abetting perjury; it does not presume perjury. To the contrary, the jurors received separate instructions regarding the government's burden of proving that offense. Finally, Pattern Instruction 5.09 explains that a conspirator is responsible for the crimes committed by his co-conspirator, an accurate statement of the law.

### E. Closing Arguments

Litwin raises two objections to the closing argument. The first, AUSA MacArthur's reference to Defendant Glickman's plea agreement, has already been addressed. Litwin's second argument is that Ms. MacArthur commented improperly on his decision not to testify. The specific statement she made was a reference to one of Defendant Chavin's business transactions; she explained, "[Y]ou [the jury] know that this was a sham transaction . . . because Mr. Litwin, based on his experience, should have been able to answer those same questions himself or at least could have looked up the information from the resources that were available to him." (Tr. 2665-66.) The reference was to Mr. Litwin's tax law expertise, not to his failure to testify. AUSA MacArthur's statement does not warrant a mistrial.

### III. Sentencing Issues relating to Leonard Chavin

The probation officer concluded, for the reasons set forth in her April 23, 2001 revised report, that Mr. Chavin's total offense level for purposes of the Sentencing Guidelines is 25. Defendant Chavin challenges this determination on several grounds and, in addition, seeks a downward departure due to his compromised physical health. These matters were the subject of a lengthy hearing on Wednesday, May 2, 2001. The court's conclusions with

17

respect to the disputed matters are summarized here.

## A.    Grouping of Offenses

The Guidelines direct that all counts "involving substantially the same harm" are to be grouped together. U.S.S.G. § 3D1.2. The probation officer did group tax counts together as one group and bankruptcy counts together as a second group. The officer declined to group tax counts together with bankruptcy counts. Defendant Chavin argues grouping of these counts is appropriate under U.S.S.G. § 3D1.2(d) because the offense level "is determined largely on the basis of the total amount of harm or loss."

The court concurs with the probation officer's determination on this issue. Guidelines Commentary provides examples of counts to be grouped under this rubric, and those examples differ significantly from the situation here.   Mr. Chavin engaged in conduct designed to conceal income from the IRS. He also failed to disclose certain of his assets in the bankruptcy proceedings.  Although the total loss or harm is relevant to the offense level for each of the two types of offenses, the nature of the conduct is different, the victims are different, and the time frame and context do not completely overlap. Mr. Chavin's effort to cheat his creditors simply does not involve "substantially the same harm" as does his effort to cheat the government.

## B.    Tax Loss

The jury concluded that Mr. Chavin violated the law when he took a bad-debt loss deduction of $900,000 on his 1992 income tax return and carried that loss over into subsequent years. He argues, however, that the jury's general verdict of guilty on the tax

charges does not necessarily include a finding that Mr. Chavin's failure to report $300,000 received from Sang Roc Chu for a lease termination was also a knowing and wilful criminal act. He also urges that he was in fact entitled to take the $339,792 from the Cole Taylor Bank loan as a short-term capital loss.

With respect to the $300,000 lease termination fee, this court agrees with the government that the jury's general verdict of guilty on Count I defeats Chavin's argument on this score. If the jury did not believe Mr. Chavin wilfully failed to report $300,000, then it would not have found him guilty on the $900,000 bad-debt loss charge filed by the government.

Although it is a closer question, the court reaches the same conclusion with respect to the $339,792 bank loan. The court sees this as a closer question because there is no dispute that Chavin was in fact responsible as a guarantor on that loan, and the court is not prepared to conclude from the fact that Cole Taylor had not yet called in the loan that Chavin himself controlled the question of whether and how it was to be satisfied. The jury heard evidence, however, that Chavin was not the owner of SCV Corporation at the time he paid back the loan and took the bad-debt loss. Its guilty verdict on Count I is most logically understood as a determination that Chavin improperly claimed a bad-debt loss of $900,000 and was entitled to no portion of that loss.

## C.     Effect of Other Tax Errors on Tax Loss Calculation

Under the relevant Guidelines provisions, the base offense level for tax evasion is set by the tax loss, that is "the total amount of loss that was the object of the offense." U.S.S.G.

§ 2T1.1(c)(1). The Notes direct that where gross income is underreported, the tax loss is treated as 28% of the unreported gross income, "unless a more accurate determination of the tax loss can be made." § 2T1.1(c) Note (A). Chavin argues that for purposes of determining the tax loss, the court should also recognize numerous other errors that Mr. Kessler made in calculating his tax liability, several of which were in the government's favor. An accurate tax return, Chavin suggests, would reflect a far lower loss to the government than is reflected in the probation officer's calculations.

Having considered the arguments of counsel on this issue, the court respectfully overrules Chavin's objection. In *United States v. Martinez-Rios*, 143 F.3d 662, 671 (2d Cir. 1998), the Second Circuit observed that § 2T1.1(c), Note A allows defendants to employ "legitimate but unclaimed deductions" in calculating tax loss. Other courts have disagreed with this conclusion, however, *see United States v. Spencer*, 178 F.3d 1365, 1368 (10th Cir. 1999), and our own Court of Appeals has referred to the *Martinez-Rios* approach as dicta. *See United States v. Utecht*, 238 F.3d 882, 889 (7th Cir. 2001) (refusing to reach the issue, where the sentence imposed by the district court would not have changed even if defendant had been credited with additional deductions).

Another Seventh Circuit panel has rejected defendant's argument that a tax adviser could have structured defendant's tax liability in a more favorable way and that the tax loss for sentencing purposes should reflect such a calculation. In *United States v. Wu*, 81 F.3d 72 (7th Cir. 1996), the court noted that

sentencing under the Guidelines "is not a duplicate of the calculation in civil

proceedings; the Guidelines often use rough-and-ready calculations to curtail complexity." ... The method [of calculating tax loss] suggested by [Defendant] Wu would make it the responsibility of the United States Courts to comb the books of convicted tax evaders seeking ways in which they could have lowered their tax liability and their sentences. Unfortunately for Wu, it is simply not our role to play "Monday Morning Tax Advisor."

81 F.3d at 75 (citation omitted).

This court, similarly, does not understand the "more accurate determination" language in the Guideline Notes as an invitation to defendants to review or amend their returns in a way that might more accurately reflect their liability. The court believes the best calculation of the tax loss for which Mr. Chavin should be sentenced is a calculation of the tax liability he would have incurred had he not successfully claimed a $900,000 bad-debt deduction.

Chavin has not objected to the probation officer's calculation of the tax loss from this improper deduction: $199,529.00. Pursuant to U.S.S.G. § 2T1.1(a)(1), which refers to the Tax Table at § 2T4.1(J), the base offense level is 15. Nor does Chavin object to a two-level increase for sophisticated concealment pursuant to § 2T1.1(b)(2). The court concurs that such an increase is appropriate. The final base offense level for the tax offenses is therefore 17.

D.    **Bankruptcy Loss**

Chavin's arguments with respect to the bankruptcy loss calculations are more persuasive. The probation officer agreed with the government that the loss should be measured by the amount of debt that Mr. Chavin sought to have discharged in bankruptcy. Specifically, he claimed liabilities in the amount of $1,902,084.57. The probation officer

acknowledged that this amount is probably excessive because Mr. Chavin would have been motivated to exaggerate his liabilities for purposes of the bankruptcy filing. Nevertheless, she understands the sum of Chavin's claimed liabilities as the amount of loss that Chavin intended. Notes to the relevant Guidelines provision explain that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." § 2F1.1 Note 8.

The court respectfully disagrees with the probation officer's assumption that the full amount of Mr. Chavin's desired discharge is the appropriate measure of intended loss. Although he was charged here with making false statements in bankruptcy proceedings, the government did not charge Mr. Chavin with falsely puffing up his liabilities. Instead, the indictment charged him in Counts 8-15 with concealing six specific assets from the bankruptcy trustee. The jury found Mr. Chavin guilty on counts relating to two insurance policies (Counts 10, 11, 14, and 15), but acquitted him on the charges with respect to two other insurance policies, his shares of General Employment stock, and a 1993 Volvo. The court believes it is the value of the assets that Mr. Chavin concealed, not the value of his estate as a whole, that accurately reflects the loss he intended to inflict on his creditors. The court recognizes that, in *United States v. Holland*, 160 F.3d 377, 380 (7th Cir. 1998), the Seventh Circuit affirmed a determination that the debtors in a voluntary bankruptcy filing intended a loss of the full amount of the judgment for which they sought a discharge. Only a year earlier, however, another panel assumed that bankruptcy loss amounts to the value of property improperly concealed. *See United States v. Madoch*, 108 F.3d 761, 767 (7th Cir.

1997). *See also United States v. Dolan*, 120 F.3d 856, 870 (8th Cir. 1997) ("The district court should calculate the actual or intended loss amount by using either the value of the assets concealed or the value of the debtor's liabilities, whichever is less.") In this case, where the bankruptcy proceeding was initiated by Chavin's creditors, the court believes the latter approach is appropriate.

Recognizing the possibility that the court might use the value of the concealed assets as the measure of loss, the government urges the court to consider Mr. Chavin's conduct in concealing the four assets on which he was acquitted as "relevant conduct" for purposes of his sentence. The court argues that such treatment is appropriate, despite the jury's verdicts. The jury concluded that the government did not prove that Mr. Chavin wilfully concealed those assets beyond a reasonable doubt. The court itself believes, based on the lower preponderance standard, that the evidence supported the government's charges on these four assets, as well. In reaching this conclusion, the court notes the Seventh Circuit's conclusion that Chavin's rationale for concealing the stock options was "preposterous." *In re Chavin*, 150 F.3d at 728. The court notes, further, Chavin's failure ever to amend his bankruptcy filings, even after three federal courts concluded that his dishonesty precluded a discharge.

The court concludes the appropriate bankruptcy loss figure is the full value of all six of the assets that the government charged him with concealing from his creditors. At sentencing, the parties struggled to determine the precise value of these assets, but ultimately concluded the disagreement makes no difference with respect to Mr. Chavin's ultimate sentence: Under Defendant's calculation of the value of the concealed assets, his offense level

is 16. The government's version results in an offense level of 17. Because the offense level for Mr. Chavin's tax convictions is 17, that number will control the court's determination of the appropriate Guideline.

## E. Obstruction of Justice

Defendant Chavin sent faxes and correspondence to the bankruptcy trustee, the trustee's lawyers, managing partners in the trustee's law firm, public officials, and government employees, in which he slandered the trustee and referred to him as a "blackmailer and extortionist," and a "liar-thief-perjurer." He faxed the trustee a message in which he called on the "'Good Lord' [to] bless you and your families with cancer and tumors" and called upon the "angel of death [to] have supper at your house Christmas Eve." The government contends these communications constitute threats and obstruction of justice for which Chavin's sentence should be enhanced under U.S.S.G. § 3C1.1.

Chavin objects to this enhancement. His attorney recognizes that Chavin's conduct was improper and wrongful, but notes that it does not meet the precise definition of § 3C1.1 because it did not constitute obstruction of the "investigation, prosecution, or sentencing of *the instant offense* of conviction." (emphasis supplied). It is clear that a defendant's sentence may properly be enhanced for his obstruction of a state investigation of the same conduct that resulted in a federal conviction. *See United States v. Roberts*, 243 F.3d 235, 239 (6th Cir. 2001). The court's brief research reveals no certain answer to the question of whether Chavin's threats and misconduct in communicating with the bankruptcy trustee and others constitutes obstruction of justice in the bankruptcy fraud prosecution.

One case that touches on the issue is *United States v. Lloyd,* 947 F.2d 339 (8th Cir. 1991), where the court enhanced the sentence of a defendant convicted of bankruptcy fraud on grounds of obstruction, based on the defendant's conduct in concealing assets from bankruptcy court officers and committing perjury during the bankruptcy proceedings. Reversing, the Eighth Circuit noted that the misconduct at issue "is the basis for the criminal charges against [defendant], and enhancement under section 3C1.1 is limited to obstructive conduct that occurs 'during the investigation, prosecution, or sentencing of the [charged] offense.' " 947 F.2d at 340 (citing U.S.S.G. § 3C1.1). The court recognizes that Mr. Chavin's malicious communications with the trustee were not themselves the basis for the criminal charges against him. Nevertheless, the court concludes that these communications, as improper and inexcusable as they undoubtedly were, do not constitute obstruction in the investigation, prosecution, or sentencing of the charges before this court. The court therefore declines to enhance Mr. Chavin's sentence for obstruction.

## F.      Acceptance of Responsibility

Chavin argues for a two-level reduction in the Guidelines calculations pursuant to U.S.S.G. § 3E1.1 on the basis of acceptance of responsibility.  Chavin himself bears the burden of demonstrating that he is entitled to a reduction on this basis, *United States v. Francis,* 39 F.3d 803, 807 (7th Cir. 1994), and the court concludes he has not met that burden. Chavin's failure to plead guilty does not by itself preclude a reduction for acceptance of responsibility, but renders his burden very difficult. As the comments explain, U.S.S.G. § 3E1.1, Comment note 2, a downward adjustment on this basis is not appropriate for an

called by Chavin himself at the sentencing hearing testified that, although unable to engage in strenuous physical activity, Mr. Chavin has been involved in volunteer activity on a daily basis. Before finding an "extraordinary physical impairment," the Guidelines counsel, the court must make a finding, based upon medical testimony, that the defendant needs constant care, or care that will be unavailable to him if he is incarcerated. U.S.S.G. § 5H1.4; *United States v. Sherman*, 53 F.3d 782, 787 (7th Cir. 1994). Defendant Chavin has made neither showing. He has offered no evidence that his heart condition is of a type or degree that renders the Bureau of Prisons unable to provide appropriate treatment for him, nor that incarceration will aggravate it. The court has discretion to defer the decision with respect to Mr. Chavin's departure motion in order to obtain input from the Bureau of Prisons, *id.* at 788 n.9, and will do so at Chavin's request. Based on the current record, his request for a downward departure on this basis would be denied.

## Calculations

As noted, the base offense level applicable to the bankruptcy and tax fraud charges is 17. The probation officer has applied a two-level enhancement because a portion of the offense conduct involved a violation of a prior specific judicial order: Mr. Chavin's successful effort to recover the cash surrender value of a life insurance policy only a day after a court appearance at which that precise asset was the focus. Mr. Chavin has not objected to this two-level enhancement pursuant to U.S.S.G. § 2F1.1(b)(4)(C), and the court believes it is appropriate.

The final adjusted offense level is therefore 19, and Mr. Chavin's criminal history

category is I. In determining the appropriate sentence within that range (30-37 months), the court notes its concern regarding Mr. Chavin's malicious and improper communications with the bankruptcy trustee, and his brazen conduct in obtaining the cash surrender value of a life insurance policy he knew to be property of the bankruptcy estate. For the reasons stated on the record, the court concludes the appropriate sentence here is at the top of the Guideline range: 37 months in the custody of the Bureau of Prisons. At Mr. Chavin's request, the court will recommend that the sentence be served at the Bureau's Lexington, Kentucky facility. The fine range prescribed is $6,000 to $60,000; the court imposes a fine of $10,000, payable immediately.

ENTER:

Dated: May 11, 2001

REBECCA R. PALLMEYER
United States District Judge

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 CR 282 - 1,2 | **DATE** | 11/2/2000 |
| **CASE TITLE** | USA vs. Leonard Chavin, Martin E. Litwin | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Martin Litwin, an attorney licensed to practice law in Illinois and admitted to practice before this court, has moved for leave to file an additional appearance as his own defense counsel in this case. After careful consideration, the court has denied the motion for reasons explained in open court and outlined briefly in this order. Enter Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | Document Number |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | date docketed | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | 11/2/2000 | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| | ETV | courtroom deputy's initials | | ETV | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 99 CR 282 |
| | ) | |
| LEONARD CHAVIN, MARTIN E. | ) | Judge Rebecca R. Pallmeyer |
| LITWIN, and MICHAEL S. GLICKMAN, | ) | |

## ORDER

Defendant Martin Litwin, an attorney licensed to practice law in Illinois and admitted to practice before this court, has moved for leave to file an additional appearance as his own defense counsel in this case. Defendant Litwin is represented by Francis Paul DeRosa, an experienced criminal defense attorney. Mr. Litwin asserts that he himself has substantial experience in bankruptcy, real estate, tax, and business corporate law, experience that would be useful in defending this case which Mr. DeRosa presumably lacks. In response to the court's expressed concerns and to the objections of the Assistant United States Attorney, Defendant Litwin has assured the court that he would participate only by cross-examining certain witnesses, that he would not "double-team" with his own attorney, and most significantly, that he will in fact take the stand and waive his Fifth Amendment privilege not to testify in this case. After careful consideration, the court has denied the motion for reasons explained in open court and outlined briefly in this order.

It is undisputed that a defendant has the constitutional right to conduct his own defense. *Faretta v. California*, 422 U.S. 806 (1975). That right does not, however, extend to requiring that a defendant be permitted to act as co-counsel along with his own attorney or

reiterating the principle that courts are not required to allow defendants to split the responsibilities of representation with an attorney are myriad.") (citing cases).

Given what appears to be a well-settled legal principle, then, the court expresses its serious, practical concerns about the hybrid representation proposal in this case. First, as the government notes, permitting Mr. Litwin to appear as his own attorney effectively allows him to present his version of his facts to the jury without testifying on his own. Mr. Litwin's assurance that he will in fact take the stand–a decision he announced on the morning of trial in support of this motion–does not completely resolve this difficulty. An attorney can present facts or suggest inferences to a jury via cross-examination in a manner and method quite different from the presentation of facts by a witness under oath. In any event, after hearing the government's case against him, Mr. Litwin might well regret his announcement that he plans to take the witness stand. Should he at that point elect to resurrect his Fifth Amendment right not to testify, there is no legal way for the court to enforce his commitment to do so.

Second, with respect to the adequacy of Mr. Litwin's representation in this case, which concededly involves relatively complicated issues of real estate, tax, and bankruptcy law, there is no indication that Attorney DeRosa will not be fully capable of presenting whatever complicated issues there are in an effective way to the jury. Indeed, the jury itself has no particular sophistication in bankruptcy or real estate law and will have to have the concepts presented to them in a way comprehensible by lay persons. The fact that Mr. Litwin is licensed to practice law does not make hybrid representation in this case any more palatable.

*See Oakey*, 853 F.2d at 552, 553 (noting that defendant was a "practicing attorney in the Cook County misdemeanor courts," yet still declaring that his requested hybrid representation was "not permissible"). *See also Mosely*, 810 F.2d at 98 (rejecting defendant's argument that, because he was an attorney and a judge, admitted to practice in both state and federal courts, any policy justifications for the district court's denial of his motion for hybrid representation are negated). Mr. Litwin will be, of course, welcome to suggest questions and phraseology to his attorney during the course of the trial. Nor must he have his own appearance on file in order to participate in strategy decisions. Those decisions are ones he is welcome to continue making together with his defense attorney.

Finally, the court has at least some concern about the impact that Mr. Litwin's appearance as his own attorney in this case might have on his co-Defendant, Mr. Leonard Chavin. In the only case this court could locate in which a court did permit a defendant to act as his own co-counsel, a co-defendant argued for severance. *See United States v. Taglia*, 922 F.2d 413 (7th Cir. 1991). As here, the movant had previously been represented by the co-defendant attorney. *Id.* at 416. Defendant Taglia's motion for severance rested on the fact that his co-defendant was his former lawyer, and the Court of Appeals noted the concerns raised by the possibility that the co-defendant might cross-examine him using knowledge he had acquired in representing him. *Id.* The Court of Appeals affirmed denial of the motion for severance but pointed out that the procedure in which the co-defendant lawyer served as his own co-counsel was "a procedure we have called impermissible." *Id.* at 553.

The court concludes, in its discretion, that practical considerations and concerns

regarding the exercise of Mr. Litwin's Fifth Amendment rights preclude his acting as co-counsel in this case. The motion is, therefore, denied.

ENTER:

Dated: November 2, 2000

REBECCA R. PALLMEYER
United States District Judge

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 CR 292 - 1,2,3 | **DATE** | 11/15/2000 |
| **CASE TITLE** | USA vs. Chavin, Litwin, Glickman | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Defendant Chavin seeks leave to introduce evidence of a 1997 scheme in which Michael Glickman, a key witness for the government, allegedly defrauded his mother by persuading her to act as co-signor on two $25,000 loans. Defendants can present such evidence without eliciting testimony from Glickman's mother concerning the alleged fraud scheme.

(11)  ■  [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/16/2000 | |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# ORDER

Defendant Chavin seeks leave to introduce evidence of a 1997 scheme in which Michael Glickman, a key witness for the government, allegedly defrauded his mother by persuading her to act as co-signor on two $25,000 loans. Chavin argues the evidence is admissible because it shows bias on Glickman's part in favor of the government and against Defendant Martin Litwin, Glickman's first cousin.

Although the court permitted cross-examination on Michael Glickman on the source of funds for the sham purchase of Howard's Style Shop, the court concludes the evidence concerning these $25,000 loans is impeachment as to a collateral matter. There is no basis for a conclusion that Mr. Glickman's conduct was a criminal violation, that the government was aware of it, or that Mr. Glickman understood that the government would not be prosecuting him for this misconduct. Thus, Mr. Glickman's alleged misconduct in cheating his mother does not establish his bias in favor of the government.

Nor is the evidence properly admitted to establish bias against Mr. Litwin. Defendants were free to ask Mr. Glickman whether he harbors ill will against his cousin. Even if Mr. Litwin disapproves of Glickman's conduct, the fact that Mr. Glickman cheated his mother does not require the conclusion – or even create an inference – that he is biased against his cousin as a result.

In his offer of proof, Defendant Chavin asserts that "the defense will also present evidence that Mr. Glickman's mail fraud scheme against Ms. Glickman has created substantial animosity betwen co-defendant Martin Litwin and Mr. Glickman." (Defendant Leonard Chavin's Offer of Proof, at 3.) Mr. Chavin and Mr. Litwin remain free to introduce evidence that Litwin and Glickman engaged in a "bitter argument" (*id.*) and became enemies. Defendants can present such evidence without eliciting testimony from Glickman's mother concerning the alleged fraud scheme.

ENTER:

November 15, 2000

Rebecca R. Pallmeyer
United States District Judge

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 CR 282 - 1,2 | **DATE** | 11/21/2000 |
| **CASE TITLE** | USA vs. Leonard Chavin, Martin Litwin | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  On Friday, November 17, 2000 Defendant Martin Litwin called a host of witnesses to testify to his character for honesty and truthfulness. To rebut that testimony, on Monday, November 20, the government proposed to introduce records from proceedings in the Circuit Court of Cook County/Domestic Relations Division relating to Mr. Litwin's 1981 divorce. With respect to the more recent driver's license suspension and rule to show cause proceeding, however, the court concluded that some limited cross-examination of Mr. Litwin on this issue is permissible.

(11)  ■  [For further detail see order on the reverse side of the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | Document Number |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| ETV | courtroom deputy's initials | | 11/21/2000 date mailed notice | | |
| | | Date/time received in central Clerk's Office | ETV6 mailing deputy initials | | |

# ORDER

On Friday, November 17, 2000 Defendant Martin Litwin called a host of witnesses to testify to his character for honesty and truthfulness. To rebut that testimony, on Monday, November 20, the government proposed to introduce records from proceedings in the Circuit Court of Cook County/Domestic Relations Division relating to Mr. Litwin's 1981 divorce. The United States argued that Mr. Litwin's failure to keep promises made as part of his divorce decree relates to his truthfulness. In addition, the government argued, the jury is entitled to consider the fact that in 1989 the Circuit Court entered an *ex parte* order enjoining Mr. Litwin's disposition of assets, including a vehicle and bank accounts. In 1996 the Circuit Court ordered that Mr. Litwin's driver's license be suspended for failure to make child support payments. Finally, in 1997 the Circuit Court found Mr. Litwin had failed to appear for a citation proceeding, issued a rule to show cause and ultimately found Mr. Litwin in contempt for failure to make such payments.

As explained in open court, the court sustained Mr. Litwin's objection to the bulk of this evidence. Just as a promise of future conduct cannot be the basis for a civil fraud action, the fact that Mr. Litwin failed to keep the promises he made in his divorce decree does not cast doubt on his truthfulness. Nor is the court inclined to introduce an *ex parte* order without any evidence that Mr. Litwin was aware of the proceeding and had a genuine opportunity to defend himself.

With respect to the more recent driver's license suspension and rule to show cause proceeding, however, the court concluded that some limited cross-examination of Mr. Litwin on this issue is permissible. Mr. Litwin did not suggest he was unaware of that proceeding, nor would the court find such a suggestion plausible, coming from an attorney of Mr. Litwin's evident sophistication. The court would permit the government to ask Mr. Litwin whether he has been found in contempt for failure to meet court-ordered payment obligations. If there are circumstances that explain Mr. Litwin's failure to appear for court proceedings initiated to obtain information concerning his assets, he is of course free to explain those circumstances.

ENTER:

November 21, 2000

Rebecca R. Pallmeyer
United States District Judge